IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDDIE KING
AN INDIVIDUAL, et al.,

   Plaintiffs,

  v.

SAM HOLDINGS, LLC
a limited liability company, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-3601-TWT

## ORDER

This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and civil conspiracy. It is before the Court on Defendant SAM Holdings, LLC's ("SAM") Motion for Partial Summary Judgment [Doc. 109] and Defendants HandsOn Ventures, LLC ("HandsOn"), Rustic Canyon, LLC ("Rustic Canyon"), and HOV Global Services, LTD.'s ("HOV Global") Motion for Summary Judgment [Doc. 110]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART SAM's Motion for Partial Summary Judgment [Doc. 109] and GRANTS IN PART and DENIES IN PART HandsOn, Rustic Canyon, and HOV Global's Motion for Summary Judgment [Doc. 110].

T:\ORDERS\11\King\msjtwt.wpd

I. <u>Background</u>

The Plaintiffs–Eddie King, Debbie King, Billy Ray Pitcher, and John Maloney–previously owned and controlled Superior Asset Management, Inc. ("Superior"). (Def. SAM's Statement of Material Facts ¶ 1.) In July 2006, representatives of HandsOn, acting as SAM's manager, negotiated with the Plaintiffs to purchase Superior, and the Plaintiffs agreed to sell their entire interest in Superior to SAM. (Chadha Decl. ¶¶ 4-5.) The Plaintiffs contend that they believed HandsOn was also bound to the agreement. (<u>See</u>, <u>e.g.</u>, Pitcher Decl. ¶¶ 3-5; Grossman Decl. ¶¶ 3-5.) In October 2006, the Plaintiffs and SAM entered into a Stock Purchase Agreement ("SPA"), in which SAM agreed to purchase the Plaintiffs' shares for $5,500,000, minus certain deductions and earn out calculations. (Def. SAM's Statement of Material Facts ¶ 5.) The purchase price was to be paid in four installments, subject to deductions and earn out calculations based on the performance of Superior. (<u>Id.</u> at ¶ 8.) The first payment (for $1 million) was due at the time the deal closed; the second (for $500,000) to be due after the close of the deal; the third (for $1.5 million) as soon as practicable after September 30, 2007; and the fourth (for $2 million) after September 30, 2008. (SPA Article III, at Nelson Decl. Ex. 1). The SPA stated that it would be governed by California law, and that modifications to the contract were required to be made in writing. (SPA, at Nelson Decl. Ex. 1).

In August 2006, Amsouth Bank notified the Plaintiffs regarding the Plaintiffs' default on a loan it had extended to Superior, which had a balance of approximately $598,000. (Def. SAM's Statement of Material Facts ¶ 13.) To enable SAM to pay the loan balance, the Plaintiffs and SAM agreed to amend the SPA and executed the First Amendment to the SPA ("Modification"). (Id. at ¶ 14.) The Modification provided that the amount of the first payment to be made on the closing date (originally $1 million) was reduced by the loan payoff amount. (Id. at ¶ 15.) Pursuant to the Modification, the balance of the first and second installments was reduced to $560,854.11. (Id. at ¶¶ 60-64.)

SAM agreed to reimburse the loan payoff amount to the Plaintiffs when the second installment of the purchase price came due in April 2007, but failed to pay both the second installment of the purchase price and the loan payoff (totaling approximately $1.1 million) when they came due. (Id. at ¶ 14.) The Plaintiffs repudiated the Modification and brought this action, alleging that SAM, HandsOn, Rustic Canyon, and HOV Global had breached the SPA, breached the covenant of good faith and fair dealing, committed fraud, and engaged in a civil conspiracy [Doc. 1].

The Plaintiffs filed the Complaint in Santa Clara Superior Court on August 23, 2010, and the case was removed to the U.S. District Court for the Northern District

of California [Doc. 1]. On October 18, 2011, the case was transferred to this Court [Doc. 61]. On February 21, 2012, Defendant SAM filed this Partial Motion for Summary Judgment [Doc. 109]. SAM asks this Court to dismiss the Complaint's Second Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing and Civil Conspiracy and the Third Cause of Action for Fraud and Civil Conspiracy. The other defendants, HandsOn, Rustic Canyon, and HOV Global (collectively the "HOV Defendants"), also filed their Motion for Summary Judgment on February 21, 2012, and ask the Court to dismiss all claims against them [Doc. 110]. The Court now considers these motions.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

A. SAM's Motion for Summary Judgment

1. Contract Modification

The Plaintiffs argue that a total of $1,147,000 is due under the first and second installments of the SPA. SAM contends that the Plaintiffs modified the SPA (the "Modification") in writing, approving of deductions which reduced the balance of the first and second installments to $560,854.11. (Def. SAM's Statement of Material Facts ¶¶ 60-64.) In August 2007, Plaintiff Debbie King sent SAM the Modification in the form of an email printout with an electronic signature for Plaintiff Billy Ray Pitcher and handwritten signatures for the other Plaintiffs approving the reduced payments. (Id. at ¶¶ 61-62.) The Plaintiffs claim that during the phone conversation that preceded the email printout being sent, Pitcher told HandsOn's representative Parvinder Chadha that he would only agree to the lowered payment if the payment would be made promptly, with no further dispute. (Pitcher Decl. ¶ 16.) SAM argues that this conversation did not occur, and that even if it did, the oral modification of the contract would not be valid. (Def. SAM's Statement of Material Facts ¶ 63.) SAM did not make any payments at all, and the Plaintiffs repudiated the Modification before filing the Complaint.

If the prompt payment condition were validly made part of the modified contract, then the Plaintiffs could repudiate the Modification as a result of SAM's failure to perform. If the prompt payment condition were not validly made part of the Modification, the Modification would have been invalid as devoid of consideration. "A modification of a written contract is not binding unless supported by a consideration." Fairlane Estates, Inc. v. Carrico Const. Co., 228 Cal. App. 2d 65, 71 (1964). The Court has seen no evidence of proper consideration for the lowering of the already agreed-upon payments besides the prompt payment condition. The Court denies SAM's Motion for Summary Judgment. There are questions of fact as to the Defendants' liability for the entire amount due under the SPA.

2. Breach of the Covenant of Good Faith and Fair Dealing

The Plaintiffs bring a claim for contractual breach of the covenant of good faith and fair dealing. (Pls.' Br. in Opp'n to Def. SAM's Mot. for Partial Summ. J., at 11.) "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers, Inc. v. Marathon Dev. Cal. Inc., 2 Cal.4th 342, 371 (1992). "A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." Id. at 372. The Plaintiffs contend that the Defendants fraudulently induced them into the SPA with no intention to pay the purchase price, and then tried to assuage the Plaintiffs'

uneasiness by repeatedly promising that the payment would come. The Plaintiffs' evidence of the non-payment and these delay tactics precludes summary judgment on this claim.

      3.     Civil Conspiracy

The Plaintiffs have not produced evidence of a civil conspiracy. Civil conspiracy is not an independent tort; it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." City of Indus. v. City of Fillmore, 198 Cal. App. 4th 191, 211-12 (2011). A civil conspiracy requires the formation of a group of two or more persons that agreed to a common plan or design to commit a tortious act. Id. at 212. The Plaintiffs have failed to show that two or more entities engaged in a common plan.

There is no evidence before this Court beyond mere speculation that HOV Global or Rustic Canyon ordered, authorized, or participated in the events at issue. Wyatt v. Union Mortg. Co., 24 Cal.3d 773, 785 (1979). "[T]he waters are too muddy" is not sufficient evidence to bring to a jury. (Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 22.) HandsOn did participate in the SPA, but only in its capacity as manager of SAM. As SAM's agent, HandsOn could not conspire with SAM. See Gruenberg v. Aetna Ins. Co., 108 Cal. Rptr. 480, 486-87 (Cal. 1973); Janken v. GM

Hughes Elec., 53 Cal. Rptr. 2d 741, 755 (Cal. Ct. App. 1996). SAM could not conspire with itself, and thus this claim must be dismissed.

### 4. Fraud

The Plaintiffs allege that they were fraudulently induced into entering the SPA based on the Defendants' fraudulent promises, and that they were then lulled into not trying to reclaim their company by the Defendants' ongoing misrepresentations that they would pay the Plaintiffs. The elements of fraud are 1) misrepresentation; 2) knowledge of falsity; 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage. Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996). The Plaintiffs have sworn that HandsOn told them it would acquire their company, and not SAM. (Pitcher Decl. ¶ 3; Grossman Decl. ¶ 4.) The Plaintiffs have sworn, and produced emails, which tend to show that HandsOn employee Mr. Chadha continued to give assurances that payment was forthcoming as late as November 2007. (Pitcher Decl. at ¶ 17, Ex. 3.) There are questions of fact as to whether these representations were false when made, and were made for the purpose of delaying the Plaintiffs' recourse to litigation. The Plaintiffs were justified in relying on these promises, and relied on them to their detriment, as they allege that they would have pursued this litigation sooner. (Compl. ¶ 59.)

SAM seeks to dispose of the fraud claim on summary judgment, arguing that

the statute of limitations ran on this claim before the Plaintiffs filed the Complaint. Under California law, there is a three-year statute of limitations on fraud claims, that does not begin to run until plaintiffs were aware or should have been aware of the fraud. Cal. Civ. Proc. § 338(d); <u>Broberg v. Guardian Life Ins. Co. of America</u>, 171 Cal. App. 4th 912, 920 (2009). The statute begins to run on the discovery date; the discovery date is the "date the complaining party learns, or at least is put on notice, that a representation was false." <u>Brandon G. v. Gray</u>, 3 Cal. Rptr. 3d 330, 334 (Cal. Ct. App. 2003). <u>See</u> <u>also</u> <u>San Francisco Unified Sch. Dist. v. W.R. Grace & Co.</u>, 44 Cal. Rptr. 2d 305, 309 (Cal. Ct. App. 1995) ("The statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by wrongdoing–when the plaintiff has notice of information or circumstances that would put a reasonable person on inquiry...Once a plaintiff suspects wrongdoing and therefore has an incentive to sue, he or she must decide whether to file suit or sit on his or her rights. When a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her.").

The parties dispute whether the Plaintiffs were put on notice of fraud beginning in early August 2007 at the latest, as the Defendants contend; or in November 2007, as the Plaintiffs contend. "Generally, statute of limitations issues raise questions of fact that must be tried; however, when the uncontradicted facts are susceptible of only

one legitimate inference, summary judgment is proper." Kline v. Turner, 87 Cal. App. 4th 1369, 1374 (2001). Whether or not it was unreasonable for the Plaintiffs to continue to rely on Mr. Chadha's promises until November 2007, the fact remains that the Plaintiffs have produced evidence of an ongoing fraud until that time. "So long as a person continues to commit wrongful acts in furtherance of a conspiracy to harm another, he can neither claim unfair prejudice at the filing of a claim against him nor disturbance of any justifiable repose built upon the passage of time." Wyatt, 24 Cal. 3d at 787. The Plaintiffs filed the Complaint on August 23, 2010, which is less than three years after November 2007. The Court denies SAM's Motion for Summary Judgment on this claim.

> B. HandsOn, Rustic Canyon, and HOV Global's Motion for Summary Judgment
>
> > 1. Breach of Contract

"Under California law, only a signatory to a contract may be liable for any breach." Clemens v. American Warranty Corp., 238 Cal. Rptr. 339, 343 (Cal. Ct. App. 1987). The HOV Defendants claim that they were not parties to any contract with the Plaintiffs, and thus cannot be liable for any breach of the SPA. Only the Plaintiffs and SAM Holdings signed the SPA.

"The traditional agency test requires a plaintiff to demonstrate: (1) a manifestation by the principal that the agent shall act for him; (2) that the agent has

accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." Arias v. Capital One, N.A., No. C 10-1123, 2011 WL 835610, at *4 (N.D. Cal. March 4, 2011), quoting Sun Microsystems, Inc. v. Hynix Semiconductor Inc., 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009). There is no evidence that Rustic Canyon or HOV Global manifested to the Plaintiffs that SAM contracted on their behalf to purchase Superior or that the Plaintiffs understood that Rustic Canyon or HOV Global were controlling the stock purchase.

HandsOn claims an agency relationship with SAM. HandsOn was SAM's manager and acted on SAM's behalf in executing the SPA and the Modification. However, "it is a matter of basic California contract law that where his principal is disclosed an agent cannot be held liable for breach of a contract to which he is not a party." Cruz v. United States, 219 F. Supp. 2d 1027, 1038 (N.D. Cal. 2002), citing Filippo Indus., Inc. v. Sun Ins. Co. of New York, 88 Cal. Rptr. 2d 881 (Cal. Ct. App. 1999). Furthermore, "it is well established that 'employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.'" Barrera v. Federal Express Corp., No. C 08-2668, 2008 WL 4414723, at *2 (N.D. Cal. 2008), quoting Shoemaker v. Myers, 801 P.2d 1054 (Cal. 1990). The Plaintiffs, however, have shown that SAM was not in existence at the time that

HandsOn executed the contract. If HandsOn executed the contract on behalf of a non-existent principal then HandsOn may be liable for breach of the contract.

> 2. Alter Ego Theory

The Plaintiffs did not plead an alter ego theory of liability in their Complaint. However, the Defendants were on notice of the claim as a result of discovery. The Plaintiffs may prevail on the alter ego claim if they can show that the Defendants treated the assets of SAM as their own, commingled funds with SAM, controlled SAM's finances, shared officers or directors with SAM, or that SAM was undercapitalized. See Wady v. Provident Life and Acc. Ins. Co. of America, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002). "To invoke the alter ego doctrine, Plaintiffs must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will follow." Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011). There is some evidence that SAM was a shell company which the HOV Defendants used as their instrumentality to gain control of the Plaintiffs' business and then default on all their payment obligations. There are questions of fact as to the liability of the HOV Defendants. The motion is granted with respect to the Plaintiffs' civil conspiracy claim.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART SAM's Motion for Partial Summary Judgment [Doc. 109] and GRANTS IN PART and DENIES IN PART HandsOn, Rustic Canyon, and HOV Global's Motion for Summary Judgment [Doc. 110].

SO ORDERED, this 13th day of August, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge